UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BYRON TERRELL SMITH, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-00196-JMB |
| ) | |
| UNKNOWN QUENTIN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Byron Terrell Smith, Sr. for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice for failure to state a claim.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted an inmate account statement in support of his motion to proceed in forma pauperis. However, having reviewed the information contained in the motion, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay this amount, he must submit a copy of his prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

2

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a pro se litigant incarcerated at the Mississippi County Detention Center in Charleston, Missouri. He brings this action pursuant to 42 U.S.C. § 1983, naming Correctional Officer Unknown Quentin as the sole defendant. Officer Quentin is sued in his official capacity only. (Docket No. 1 at 2).

In the "Statement of Claim" section of his complaint, plaintiff states that on October 1, 2019, Officer Quentin refused to give plaintiff his medication, even though the "medication is mandatory." (Docket No. 1 at 4). Plaintiff does not identify the medication or the reason he takes it. Subsequently, on October 5, 2019, plaintiff alleges that Officer Quentin "hit [him] in [his] testicle while performing an inmate pat down." Plaintiff also claims that on several occasions, Officer Quentin has threatened him with a taser gun, lockdown, and a "beatdown."

Attached to the complaint are five handwritten exhibits lettered A through E.[1] The exhibits appear to be copies of documents that plaintiff wrote to Mississippi County Detention Center administrators.

In Exhibit A, plaintiff states that Officer Quentin is always "picking on" him and other black inmates. (Docket No. 1 at 8). Specifically, plaintiff asserts that Officer Quentin threatens inmates and uses racial slurs. Plaintiff believes that Officer Quentin has a "very bad attitude" and that he "will hurt someone or someone will hurt him very bad."

In Exhibit B, plaintiff alleges that Officer Quentin refused to give him medication on October 1, 2019. (Docket No. 1 at 9). Plaintiff states that he has had problems with Officer Quentin in the past, but has never had his medication denied before. As before, plaintiff fails to identify the medication or the reason it has been prescribed. He notes that he has been in the jail for six months and has never been refused his medication before.

In Exhibit C, plaintiff alerts the jail administrators that Officer Quentin hit him in the testicles on October 5, 2019, during a search. (Docket No. 1 at 10). He asks for someone to check into the matter. Plaintiff also mentions that Officer Quentin is "talking trash" to him.

In Exhibit D, plaintiff informs jail administrator Edward Lee that he is being "harassed" by Officer Quentin and that he needs help. (Docket No. 1 at 11). Plaintiff states that he will defend himself from Officer Quentin if necessary.

Finally, in Exhibit E, plaintiff purports to list the grievance forms he has submitted. (Docket No. 1 at 12).

Plaintiff is asking for "some type of action" to be taken. (Docket No. 1 at 5). He is also seeking $1.5 million in damages.

---

[1] The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

## Discussion

Plaintiff is a pro se litigant who brings this action pursuant to 42 U.S.C. § 1983. He alleges that Officer Quentin used excessive force against him, was deliberately indifferent to his medical needs, and made verbal threats towards him. For the reasons discussed below, this action must be dismissed for failure to state a claim.

### A. Official Capacity Claim Against Officer Quentin

Plaintiff has sued Officer Quentin in his official capacity only. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, plaintiff alleges that Officer Quentin is a correctional officer with the Mississippi County Detention Center. As such, plaintiff's official capacity claim against Officer Quentin is actually a claim against Mississippi County itself.

A local governing body such as Mississippi County can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, plaintiff must establish the governmental entity's liability for the alleged

5

conduct. *See Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of Mississippi County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

6

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Plaintiff has failed to allege any facts supporting the proposition that Mississippi County has an unconstitutional policy or custom. With regard to "policy," plaintiff does not point to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" as causing a constitutional violation. With regard to "custom," plaintiff does not identify any widespread pattern of misconduct, much less show that county officials were indifferent to such misconduct. Instead, plaintiff's complaint is focused on the actions of a single individual. However, plaintiff has not demonstrated that Officer Quentin's actions are attributable to Mississippi County due to the county's failure to train or supervise. That is, he has not alleged facts showing a "pattern of similar constitutional violations by untrained

employees" to support a failure to train claim. Because plaintiff has not alleged sufficient facts to state a claim against Mississippi County, his official capacity claim against Officer Quentin must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

## B. Individual Capacity Claims

As discussed above, plaintiff has sued Officer Quentin in his official capacity only. An official capacity claim against an individual is actually a claim against that individual's employer, which in this case is Mississippi County. Plaintiff has not stated a claim against Mississippi County, so this action must be dismissed. Nevertheless, even if plaintiff had sued Officer Quentin in his individual capacity, his complaint would still be subject to dismissal for failure to state a claim.

### i. Excessive Force Claim

At all relevant times, plaintiff was a pretrial detainee at the Mississippi County Detention Center, meaning that his claims are governed by the Due Process Clause of the Fourteenth Amendment. The Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). *See also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); and *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Analysis of excessive force claims under the Due Process Clause focuses on whether the

8

defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). To that end, the Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014).

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, plaintiff alleges that on October 5, 2019, Officer Quentin "hit [him] in [his] testicle while performing an inmate pat down." (Docket No. 1 at 4, 10). He provides no further details such as the amount of force used, the extent of injury – if any – that was inflicted, or even that the act was intentional, rather than an unintended consequence of the pat down search. In short, the paucity of facts requires the Court to speculate as to the wrongfulness of Officer Quentin's actions. However, to support a § 1983 action, plaintiff must demonstrate a plausible claim for relief, which

9

is more than a "mere possibility of misconduct." *See Ashcroft*, 556 U.S. at 679. Therefore, even if plaintiff had sued Officer Quentin in an individual capacity, he has failed to state an excessive force claim.

### ii. Deliberate Indifference to Medical Needs Claim

As previously stated, at all relevant times, plaintiff was a pretrial detainee in the Mississippi County Detention Center, so his constitutional claims fall within the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006).

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional

interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Here, plaintiff alleges that on October 1, 2019, Officer Quentin "refused to and did not give [him] medication," which is "mandatory." Plaintiff does not, however, provide any other factual amplification. For example, he does not identify the medication he was refused, he does not indicate the reason he takes the medication, he has not established that he suffers from a serious medical need, and he does not demonstrate how his inability to receive this medication on a single occasion put him at risk. In other words, he has not provided factual allegations showing that Officer Quentin's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." As with his excessive force claim, plaintiff is asking the Court to speculate about unasserted facts, rather than presenting a plausible claim for relief. Therefore, even if plaintiff had sued Officer Quentin in an individual capacity, he has failed to state a deliberate indifference claim.

### iii. Verbal Threats Claim

In general, "mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). To determine whether a constitutional line has been crossed, a court looks to factors such as "the amount of force that was used in relationship to the need presented, the extent of injury inflicted, and the motives of the state officer." *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015). A "threat is redressable under § 1983 if it caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Id.*

Here, plaintiff alleges that Officer Quentin threatened him on several occasions with a taser gun, lockdown, or a "beat down." He also claims that Officer Quentin has "talk[ed] trash" to him, and has used racial slurs. As noted above, however, "verbal harassment or idle threats" alone are not sufficient to support a constitutional claim. Plaintiff does not indicate that the alleged threats were accompanied by any use of force, or that he suffered any injury as a result. Therefore, even if plaintiff had sued Officer Quentin in an individual capacity, his allegation regarding verbal threats fails to state a constitutional claim.

### C. Preservice Dismissal

Pursuant to 28 U.S.C. § 1915, the Court is required to dismiss an action filed in forma pauperis "at any time" if the Court determines that the action "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In this case, plaintiff has named Officer

Quentin as the sole defendant. Officer Quentin is sued in an official capacity only. As explained above, the official capacity claim against Officer Quentin is actually a claim against his employer, Mississippi County. However, plaintiff has failed to allege a municipal liability claim against Mississippi County, necessitating the dismissal of this action. Furthermore, even if plaintiff had sued Officer Quentin in his individual capacity, he has failed to state a claim against him for excessive force, deliberate indifference, or for making verbal threats. For these reasons, the Court will dismiss this action without prejudice for failure to state a claim.

### D. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion will be denied as moot as this action is being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.00 within **twenty-one (21) days** of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his inmate registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 20th day of March, 2020.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE